1  DANA McRAE, State Bar No. 142231
   County Counsel, County of Santa Cruz
2  JASON M. HEATH, State Bar No. 180501
   Assistant County Counsel
3  701 Ocean Street, Room 505
   Santa Cruz, California 95060
4  Telephone: (831) 454-2049
   Fax: (831) 454-2115

5

6  **Attorney for Defendants County of Santa Cruz
   and Steve Robbins**

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

| ISAAC VALDIVIA, | Case No. C08 00916 JF |
|---|---|
| Plaintiff, | **DECLARATION OF LEN LOFANO IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT** |
| v. | |
| COUNTY OF SANTA CRUZ; STEVE ROBBINS; TEN UNKNOWN CORRECTIONAL OFFICERS; TEN UNKNOWN OTHER COUNTY EMPLOYEES, | **Date:    May 9, 2008** **Time:    9:00 a.m.** **Dept:    3 (Hon. Jeremy Fogel)** |
| Defendants. | |

22      I, Len Lofano, hereby declare:

23      1.    I am employed as the Chief Deputy of the Corrections Bureau for the Santa Cruz

24  County Sheriff-Coroner's Office ("Sheriff's Office").  I have been employed in this position since

25  August 28, 2004.  In this position, I am the top management official in the Corrections Bureau and I

26  am responsible for all jail operations in the County.  I have personal knowledge of the facts set forth

27  below, and if called upon to testify thereto I could and would do so competently.

28

1        2.      The Sheriff's Office has an Inmate Grievance Procedure.  A true and correct copy of
2   the Procedure applicable during 2006 is attached hereto as Exhibit A.  Attached hereto as Exhibit B
3   is a true and correct copy of Corrections Procedure #3-2 (the version applicable in 2006), which
4   describes (in section E) the appeal process for Inmate Grievances in a simplified manner as part of
5   the Inmate Orientation, Rules, and Regulations.  The point of this process is to establish an effective
6   way for an inmate to resolve issues relating to conditions of confinement, including but not limited
7   to medical care, classification, disciplinary action, etc.  Pursuant to this process, any inmate may file
8   a grievance against any act or procedure of the Corrections Bureau.  After an inmate has completed
9   and signed a grievance form, it is forwarded to any duty officer for review (this is the first level of
10  review).  If possible, the duty officer is to meet with the inmate to discuss the grievance.  If the duty
11  officer is able to resolve the issue, it is handled at the first level of review.  The duty officer writes
12  the resolution of the grievance on the reverse side of the inmate grievance form and forwards it to
13  their Supervising Correctional Officer for review.  That person then forwards the form to the Watch
14  Commander for review.

15       3.      Under the Inmate Grievance Procedure, there are several levels of review available if
16  an inmate is dissatisfied with the handling of the grievance.  Inmates who disagree with resolutions
17  or responses to grievances may appeal to the next level of supervision.  If the duty officer is unable
18  to resolve an inmate grievance at the first level of review, the duty officer forwards the grievance to
19  the Supervising Correctional Officer for review (this is the second level of review).  If the
20  Supervising Correctional Officer is unable to resolve the grievance, that person forwards it to the
21  Watch Commander for review (this is the third level of review).  If the grievance is serious in nature
22  or related to potential violations of the provisions set forth in Title 15 of the California Code of
23  Regulations related to Jail Operations, any inmate dissatisfied with the Watch Commander's
24  resolution of a grievance may appeal to the Jail Commander (Jail Lieutenant) for a fourth level of
25  review.  If the inmate is dissatisfied with the Jail Commander's review, the fifth and final level of
26  review is the Corrections Bureau Chief Deputy (in this case, me).

27

28

4.    Plaintiff Isaac Valdivia was in the custody of the Santa Cruz County Corrections Bureau from March 10, 2006 to April 24, 2006 (at both the Rountree Minimum Security Facility and the Main Jail).  On March 18, 2006, Inmate Valdivia was assaulted by other inmates.  I conducted a search of Inmate Valdivia's file to determine whether he filed any grievances during the period from March 18, 2006 until he was released on April 24, 2006, and if so, how they were resolved.

5.    My search of Inmate Valdivia's file disclosed that he never filed a grievance alleging that correctional staff failed to protect him from the assault by other inmates on March 18, 2006, or any other grievance based on the fact that the assault took place.  In addition, Inmate Valdivia never filed a grievance alleging that correctional staff failed to provide him with adequate medical care or ignored his requests that he received medical care.  Furthermore, Inmate Validivia never filed a grievance alleging improper training or supervision of correctional staff.

6.    My search of Inmate Valdivia's file disclosed that Inmate Valdivia did file several grievances concerning the quality of medical care he was receiving from medical staff at the Main Jail.  However, each grievance was responded to in due course, and Inmate Valdivia never appealed any of the grievances to the Watch Commander, the Jail Commander, or to me (third, fourth and fifth levels of review).

7.    From March 18, 2006 to April 24, 2006, Inmate Valdivia filed six grievances:

　　　a.    On April 1, 2006, Inmate Valdivia filed a grievance alleging injuries to his hand and complaining that he was not receiving adequate medical attention.  Assistant Director of Nursing ("ADON") Phoebe Lomasney responded to this grievance on April 3, 2006, documenting that Inmate Valdivia was housed in the medical ("O") unit after he was injured and was seen by the doctor on March 20, March 23, March 27, and March 30.  ADON Lomasney noted that Inmate Valdivia would be transported that week for x-rays for his foot.  Inmate Valdivia did not appeal this response to his grievance.  A true and correct copy of the Inmate Grievance Form documenting the grievance and response is attached hereto as Exhibit C.

b.  On April 5, 2006, Inmate Valdivia filed a grievance alleging that medical staff was making jokes about his hand injury.  ADON Lomasney responded to this grievance on April 10, 2006, noting that she spoke with Inmate Valdivia on April 4, 2006 and placed him on clinic call for April 5, 2006, where he was prescribed Naprosyn and Flexeral (pain medications).  Inmate Valdivia did not appeal this response to his grievance.  A true and correct copy of the Inmate Grievance Form documenting the grievance and response is attached hereto as Exhibit D.

c.  On or about April 12, 2006 (no date is stated at the top of the form), Inmate Valdivia filed a grievance stating that his previous grievance "was not answered right" in that it "has nothing to do with if my meds are working or not" and complaining that medical staff was not doing their job correctly.  Inmate Valdivia stated that he would like to see his own doctor "from the streets" and requested medical staff to set a court date so he could get a "stay of execution."  On April 12, 2006, ADON Lomasney responded to Inmate Valdivia, documenting a conversation of that day in which she requested that he contact his lawyer or custody about the issue of a stay.  Inmate Valdivia did not appeal this response to his grievance.  A true and correct copy of the Inmate Grievance Form documenting the grievance and response is attached hereto as Exhibit E.

d.  On April 13, 2006, Inmate Valdivia filed a grievance alleging that custody staff was disrespectful to him.  Staff responded to the grievance, documenting that Custodial Officer Armenta used a raised voice the third time she had to ask Inmate Valdivia to comply with an order.  Inmate Valdivia did not appeal this response to his grievance.  A true and correct copy of the Inmate Grievance Form documenting the grievance and response is attached hereto as Exhibit F.

e.  On April 14, 2006, Inmate Valdivia filed a grievance complaining that he was not receiving medical attention for injuries he received on March 18, 2006.  On April 17, 2006, ADON Lomasney responded to Inmate Valdivia, noting that he was

1    scheduled for a medical appointment that day, and requesting that he make sure

2    he reports all of his complaints to the provider.  Inmate Valdivia did not appeal

3    this response to his grievance.  A true and correct copy of the Inmate Grievance

4    Form documenting the grievance and response is attached hereto as Exhibit G.

5       f.   On April 19, 2006, Inmate Valdivia filed a grievance complaining about pain and

6    stating that he needed stronger medication.  On April 20, 2006, ADON Lomasney

7    responded to Inmate Valididia, noting that she had answered previous grievances

8    on this issue and requesting that he submit a blue slip if his medication was not

9    working.  Inmate Valdivia did not appeal this response to his grievance.  A true

10   and correct copy of the Inmate Grievance Form documenting the grievance and

11   response is attached hereto as Exhibit H.

12        I declare under penalty of perjury under the laws of the State of California that the

13   information herein is true and correct.  Executed this 5th of March, 2008, at Santa Cruz, California.

_____

LEN LOFANO

| | SANTA CRUZ SHERIFF'S OFFICE DETENTION BUREAU **PROCEDURES** | | |
|---|---|---|---|
| | Subject: Inmate Grievance Procedure | Procedure: # 3-1 | Origin: 7/4/94 |
| | Applicability: All Facilities | Page: 1 of 3 | Revised: 12/8/04 |
| | In Compliance With: Title 15, Section 1073 "Inmate Grievance Procedure" | | |

## PURPOSE

To establish a procedure for an inmate to appeal and have resolved grievances relating to conditions of confinement, such as: medical care, classification, disciplinary action, program participation, telephone, mail, etc.

## PROCEDURE

I.  Inmate Grievance Procedure

   A.  Any inmate confined in the Santa Cruz County Detention Facilities, may at any time file a grievance against any act or procedure of the Detention Bureau.

   1.  It is the intent of this procedure that grievances of inmates be resolved as quickly as possible and by that level of staff most accessible to inmates.

   2.  Forms for the filing of grievances will be made available in all workspaces and will be issued to the inmate on request.

   B.  After in inmate has completed the grievance form, it shall be forwarded to any duty officer.

   1.  If the duty officer is able to resolve the issue or respond to the grievance, the officer shall do so as soon as possible.

   2.  If the officer recognizes that the grievance or issue stated is not related to a condition of confinement, the officer shall return the grievance to the inmate.

   3.  The officer shall write the resolution on the reverse side of the Inmate Grievance Form, sign and date the response and then forward the original to their SCO for review.

| Detention Procedure # 3-1 | All Facilities – Inmate Grievance Procedure | Page:<br>2 of 3 |
|---|---|---|

    a.    When approved by the SCO or the Blaine Street Coordinator, the inmate shall sign the grievance form on the reverse side indicating that they receive a response and copy of the original grievance.

    b.    The original Inmate Grievance Form shall then be submitted to the Facility Commander for review and retention.

C.    If the duty officer is unable to resolve a grievance related to a condition of confinement, they shall forward the grievance to their SCO as soon as possible and the SCO shall follow the above-stated procedure.

    1.    If the SCO is unable to resolve or answer the grievance, they shall forward it to the on-duty Watch Commander for evaluation and response or the Special Services Lieutenant for the Blaine Street Facility.

D.    In the event the grievance is related to other agencies, programs or staff (Medical, Medical Staff, Friends Outside, Crisis Intervention), the officer accepting the grievance shall direct the grievance to that agency for a reply as soon as possible.

    1.    The Watch Commander or Special Services Lieutenant, if required for Blaine Street Facility, may coordinate the investigations that such allied agencies if appropriate.

E.    A formal reply shall be made to inmates filing grievances within a reasonable time of the initial compliant.

    1.    Inmates who disagree with resolutions or responses to grievances may appeal to the next level of supervision by completing the appeal request on the back of the Inmate Grievance Form (either the copy or original) requiring their signature and date, and re-submitting the form to a duty officer.

    2.    Responses to appeals shall be provided to inmates by the reviewing SCO or Watch Commander within five working days of the date of the appeal.

F.    Grievances that are serious in nature or related to potential violations of the provisions set forth in Title 15 related to Jail Operations after evaluation by the Watch Commander may be referred to the Facility Commander or Special Services Lieutenant for Blaine Street for review and response.

| Detention Procedure # 3-1 | All Facilities – Inmate Grievance Procedure | Page: 3 of 3 |
|---|---|---|

II.    Inmate Abuse of the Grievance Procedure

A.    To avoid unnecessary burden on limited jail resources, the Facility Commander may order a limit to the number of grievances by an individual inmate should it appear the grievances are excessive in number and/or frivolous in nature. When abuse is determined, the inmate will be limited to two (2) grievances per calendar month.

1.    When the Facility Commander has determined excessive or frivolous grievances have been generated, the Jail Commander, or his designee, shall notify the inmate, in writing, of the limitation of two (2) grievances per calendar month. Any grievances generated in excess of the two allowed will be reviewed by the Watch Commander. The grievance will have the month of issue noted on the back and a number assigned according to the number of grievances generated after the limitation warning. The grievances will be retained by the Facility Commander and will not require further action.

2.    The grievance limitation and warning will not apply to the inmates' ability to file a grievance as an appeal to a Disciplinary Hearing. The inmates will be allowed to file one (1) grievance per Disciplinary Hearing appeal. Further grievance covering the same appeal will be dealt with according to #1 above.

3.    Due to health and safety issues associated with medical grievances, inmates that continue to file repetitive medical grievances claiming lack of medical action shall continue to be considered. These grievances can be limited to one grievance per week.

_____    12-22-07
Len Lofano, Chief Deputy    Date

| | SANTA CRUZ SHERIFF'S OFFICE DETENTION BUREAU **PROCEDURES** | | |
|---|---|---|---|
| | Subject: Inmate Orientation, Rules and Regulations | Procedure: #3-2 | Origin: 5/1/98 |
| | Applicability: Main Jail | Page: 1 of 16 | Revised: 3/24/05 |
| | In Compliance With: Title 15, "Minimum Standards for Local Detention Facilities | | |

## PURPOSE

To provide inmates admitted to the County Jail with an orientation and a listing of rules and regulations.

## PROCEDURE

I.     Inmate Orientation

    A.     BOOKS, NEWSPAPERS AND PERIODICALS

        1.     The Detention Bureau staff will make paperback books available on portable book carts. No inmate may have in his housing area any more that the following at any time:

            a.     One newspaper
            b.     Two magazines or periodicals
            c.     One paperback dictionary
            d.     Five paperback books

        2.     Inmates are not allowed to receive books, magazines, or newspapers from visitors. If mailed to the inmate, they must come from the publisher or internet bookstores. Hardbound books will be returned to the point of purchase.

        3.     Inmates may purchase, receive and read any book, newspaper or periodical accepted for distribution by the United States Post Office. Nothing herein shall be construed as limiting the right of a facility commander to:

            a.     Exclude obscene publications or writings, and mail containing information concerning where, how, or from whom such matter may be obtained: and any gang activity or any matter of a character tending to incite murder, arson, riot, violent racism, or any other form of violence; and any matter concerning unlawful gambling or an unlawful lottery.

            b.     Exclude publications or writings based on the physical composition of the material or packaging or to restrict the sources from which the jail will receive such materials where there is a valid security reason to justify such action.

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>2 of 16 |
|---|---|---|

    c.    Open and inspect publications or packages received by an inmate.

    d.    Restrict the number of books, newspapers or magazines the inmate may have in his/her cell or elsewhere in the facility at one time.

    e.    Subscriptions will be verified as PAID IN FULL before delivery to inmate. Outgoing post cards requesting subscriptions marked "bill me" will be destroyed.

4.    Hardbound books are not allowed.

B.    CIVILIAN CLOTHING FOR COURT

1.    When an inmate is scheduled for a jury trial and the court has ordered him/her to wear civilian clothes, the inmate, through his/her attorney, is to coordinate this through Court Security.

C.    CLEANLINESS

1.    Each inmate is responsible for the cleanliness of his/her housing area. Floors will be swept and mopped daily. Mops and mop buckets will be made available. All privileges will be withheld until unit is clean.

2.    Trash, papers, or any other items ARE NOT to be thrown on the floor of the dayroom, individual cells, or patio area. There are receptacles in each housing area for trash. EACH INMATE IS EXPECTED TO USE THEM.

3.    No use of any adhesive such as toothpaste or tape shall be used to hang any pictures, etc. in units. NOTHING is to be placed on the cell doors, windows, speakers, walls, vents, etc. or around edge of mirrors and windows etc.

4.    Handmade storage containers or using any items to make shelving is not authorized. Handmade storage containers will be removed and destroyed. Shelving will be confiscated and destroyed.

D.    COMMISSARY

1.    Commissary will be issued once a week on Wednesdays.

2.    An inmate may purchase a maximum of eighty dollars ($80.00) worth of items per commissary, excluding phone cards.

3.    Inmates may only spend money, which is recorded on their account.

4.    Commissary slips must be turned in by 10:00 p.m. on Tuesdays.
    *This may be modified due to holidays. Changes will be posted in advance.



5. Indigent inmates with less than $3.00 may request commissary and be given the following items on Wednesday:

    a. One (1) Indigent Bag, which includes:
        (1) Six (6) sheets of paper
        (2) Two (2) stamped envelopes
        (3) Two (2) shampoo packets
        (4) One (1) golf pencil
    b. One (1) small toothbrush
    c. One (1) small toothpaste
    d. One (1) small comb

6. Inmates who DO NOT CHECK their commissary purchase in front of the commissary clerk must accept their order as is.

7. Once inmates have purchased commissary items, they will NOT BE ALLOWED to trade any commissary items for another item. No substitutions will be provided for items not in stock.

8. Items that are missing from an inmate's order will be credited to their account.

9. All inmates may exchange their razors on Wednesday.

10. Slips will NOT be processed of they are submitted with stains on them, have any foreign substance on them or are not signed by the inmate.

11. Slips will not be processed if they are not filled out completely, not filled out correctly or not filled out in pencil.

12. Inmates released without their commissary order will have the funds credited to their accounts. They have 120 days to request a refund of these funds. After 120 days it will disposed of per Government Code 26642.

E.    COURT APPEARANCES

1. The Jail staff is aware of each inmate's court schedule and he/she will be called from his/her housing area to make court appearances.

2. When going to court, inmates are only allowed to take their court papers with them.

3. Only verified medical emergencies will excuse an inmate from court appearances.



| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>4 of 16 |
|---|---|---|

F.    INMATE GRIEVANCES

1.    Inmates may appeal and have resolved, grievances. relating to any conditions of confinement, included, but not limited to: medical care, classification actions, disciplinary actions, program participation, telephone, mail, and visiting procedures, and food, clothing, and bedding. Grievances regarding television availability will not be addressed.

   a.    Forms for the filing of grievances will be made available to the inmate upon request.

   b.    The grievance shall be forwarded to the Supervising Correctional Officer who shall conduct an investigation into the alleged grievance.

   c.    It will be forwarded to the Watch Commander for review.

   d.    If the grievance is resolved at any level, it shall be noted and a copy given to the inmate.

   e.    The original will be forwarded through the chain of command to the Jail Commander.

   f.    If there is no resolution to the grievance, the inmate may request an appeal to the Detention Bureau Chief Deputy for review of the original grievance and response.

   g.    Grievance forms that contain profanity will not be accepted or responded to.

   h.    Any forms that are stained or have foreign substance on them will not be processed.

   i.    Repeated grievances regarding the same issue will not be addressed.

   j.    Inmates who file excessive grievances may be restricted as to the number of grievances that will be addressed each month. The Jail Commander will determine excessive grievances.

   k.    Mass grievances will not be addressed.

G.    JAIL HOURS/MEALS

1.    Lights will be turned on approximately 5:30 a.m. and off at approximately 11:00 p.m. daily. Friday and Saturday nights and nights proceeding a holiday hours may be extended at the discretion of the Housing Supervisor.

2.    Meals will be served at approximately 6:00 a.m., 11:30 a.m. and 5:00 p.m., except for a special schedule on Saturdays, Sundays and holidays.

3.    All food provided by the kitchen will be consumed at the time it is served. A maximum of 30 minutes will allowed for consumption and/or disposal of a meal.

4.    After consumption of the meal the inmates are to place the trays in a neat stack by the dayroom door for pickup.

5.    Food (including fruit) may not be stored.

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>5 of 16 |
|---|---|---|

H.    JAIL ISSUE

1.    Prior to Housing, each inmate will be issued a "set-up" kit that includes clothing, bedding, utensils, etc.

2.    Upon housing. each inmate will be given a hygiene kit, which includes a pencil and a pen.  If an inmate is indigent (having less than $3.00) he/she will received a kit at no charge.  Non-indigents will be charged $3.00.

3.    Each inmate will be issued clean clothing. of appropriate size, sheet and towel once a week. and clean underclothing twice a week.  Soiled items must be exchanged on a one-for-one basis.

4.    Any use of clothing not worn for what was intended will not be condoned and may result in disciplinary action.

5.    Inmates are required to wear their jail issued sandals, or commissary purchased shoes, while participating in activities on the patio so as to stop excessive wear of issued socks.

6.    Upon release, each inmate will be required to bring out all the issued items including his/her razor and pen.

7.    Towels are not to be hung in such a manner as to obstruct the view through any window.  Towels may be hung over the top of a door but the towel will not cover the window in any manner.

8.    Cleaning implements will not be used for the purpose of exercise.

9.    Inmates in possession of damaged issue may be monetarily charged for that item.

10.    All issued clothing and "set-up" items are to be turned in prior to release.

I.    LAW LIBRARY

1.    The Law Library will be available to the inmates and request for usage will be made on an INMATE REQUEST FORM.

    a.    The use of the Law Library shall not conflict with or take precedence over other Jail recreational, medical, mealtime activities or court appearances.

2.    A maximum of two inmates may use the Law Library at one time.  Inmates shall be from the same housing unit.  Only one Isolation Security inmate will be allowed access to the Law Library at any given time.

| Detention Procedure #3-2 | Subject: Inmate Orientation, Rules and Regulations | Page: 6 of 16 |
|---|---|---|

3.    Inmates designated by court as "pro-per" shall have priority in use of the Law Library.

4.    Upon inspection and approval by the Watch Commander, attorneys may furnish their clients with law books. The law books shall be kept in the Law Library. The Jail accepts no responsibility for the condition or use of private attorney supplied books or materials.

5.    The Jail Law Library will strictly be used for <u>LEGAL BUSINESS ONLY</u>.

6.    Inmates using the Law Library must sit facing the Law books.

7.    Any type of misuse or misconduct (including passing, leaving, retrieving notes) in the Jail Law Library and destruction or defacing of the Jail will result in disciplinary action.

8.    If the copy machine or typewriter is used, all items will be inspected to insure proper use.

9.    No books or supplies may be removed from the Law Library.

J.    MAIL

1.    There is no limit on the number of letters an inmate may receive or mail each day; however, each inmate must pay his/her own postage. Inmates with less than three dollars ($3.00) on the books can mail any number of letters to an attorney, a judge, a court, or a doctor and may also mail one personal letter per week free of charge.

2.    All outgoing mail will have the inmate's name, S number and the facility's return address. Outgoing mail with drawings or graffiti on it will be returned to the inmate and not mailed out. The address while at the County Jail facility is:

> Inmate's Name, S#_____
> Santa Cruz County Jail
> 259 Water Street
> Santa Cruz, Ca 95060

If a letter does not have proper return information and it cannot be determined whom the letter is from, the address will be blacked out and "dead letter" will be marked on the envelope. The letter will then be placed into the outgoing mail.

3.    All incoming mail will be opened and checked for contraband.

4.    ACCEPTABLE MAIL:

a.    Letters

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>7 of 16 |
|---|---|---|

    b.    Paperback books, magazines and newspapers if mailed from the publisher.

    c.    Pictures and Polaroid's. They will be trimmed when inspected.

    d.    Greeting cards. Must be single layer, no plastic coating and no musical devices.

    e.    Money orders.

5.    Letters received from the courts and attorneys marked confidential or legal mail must be opened and inspected by the staff in the presence of the inmate.

6.    Only publications sent by a publisher or internet bookstore will be accepted and given to an inmate. Hardbound books, cassettes, CD's, or other items at the discretion of the Facility Commander or his designee will be returned to sender or placed in the inmate's property.

7.    First class mail of persons no longer in our custody shall be returned to the Post Office for return to sender.

8.    Magazines, periodicals, and newspapers will not be forwarded by the Jail staff upon release or transfer of an inmate.

9.    Free advertising material, fliers, catalogs and other bulk rate material will not be delivered to the inmate.

10.    Outgoing mail that appears bulky or might contain contraband will be opened and inspected.

11.    Mail between inmates in the Santa Cruz County Detention Facilities is prohibited without prior approval of the Jail Commander.

12.    Mail received from inmates in other State, Federal, City and or County Detention Facilities will not be permitted without prior approval of the Jail Commander.

13.    Stamps and other gummed seals including return address labels will be removed before delivery.

14.    Staples, stickers, glitter, tape or paper clips will be removed prior to delivery.

15.    Material relating to gangs, hate crimes or tattoo patterns will not be delivered.

16.    Questionable substances on mail i.e. stains, perfume, powder, etc. will not be delivered.

17.    Stamps, envelopes or other writing implements will not be delivered.

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>8 of 16 |
|---|---|---|

18. Outgoing mail with any markings, drawings and/or writing other than return address and addressee's address will be returned to the sender. The only exception will be envelopes marked LEGAL MAIL.

19. Mail containing any pornographic photos, images, drawings etc. will either be returned to sender or, if not possible, placed in the inmate's property.

K.   MEDICAL SERVICES

1. Medical care is available in this facility. If you need medical attention, request a slip from the nurse on medication rounds. Nurses are on duty in the Jail seven days a week. A doctor is available Monday through Friday for sick call. Special health needs should be discussed with the medical personnel. In an emergency, you will be taken to the appropriate medical facility for treatment.

2. Cost for outside medical services will be at the inmate's expense.

3. Santa Cruz County will charge $3.00 for each inmate initiated medical or dental visit. The following types of visits are excluded from charge: Services for life threatening conditions or emergencies, follow-up monitoring or referral visits made by Health Care Staff, Communicable Disease testing or treatment, any and all services related to pregnancy (including testing) and mental health evaluations. YOUR ACCOUNT WILL BE CHARGED FOR ALL OTHER SERVICES. You will not be denied health care because of lack of funds.

4. The only inmates who will be given medications during Medication rounds will be those who have a medication ordered by a Health Professional.

5. Inmates must take oral medication with water or juice.

6. No medication will be dispensed to inmates not identified by his/her wristband.

7. Tylenol, Advil and a decongestant can be ordered through commissary.

8. Inmates who have no money on the books will be evaluated by the nurse, and referred if symptomatic, to be given a decongestant, Tylenol or Advil if necessary.

L.   MONEY

1. Money may be mailed to the Jail and added to an inmate's account. Mailing of cash is discouraged. Money orders are preferable. The inmate's name and S number must be on the money order. PERSONAL CHECKS ARE NOT ACCEPTED.

2. Money may be left any day, excluding holidays, at the reception desk in the jail lobby from 8:00 a.m. to 12:00 p.m. and 1:00 p.m. to 3:30 p.m. EXCEPTION:

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>9 of 16 |
|---|---|---|

On Wednesday's, the money must be left between 1:00 p.m. and 4:00 p.m.

3.    Inmates may not transfer money to another inmate's account.

4.    Coins will no longer be counted at the time of intake. They will be placed with the inmates' valuables and returned at the time of inmates' release. They will not be added to the inmates account.

M.    PROPERTY RELEASE

1.    Generally, property belonging to an inmate shall not be released, with the exception of keys. The Watch Commander must approve any exception.

2.    Inmate money is released only with the approval of the Watch Commander.

3.    An inmate who has been sentenced to state or federal prison may release all property.

N.    RECREATION

1.    Inmate patio areas may be used daily, depending upon the weather and the cleanliness of the unit. No furniture is allowed on patios.

2.    Exercising in groups of four or more is not allowed.

3.    Inmates are required to wear shoes or sandals while on patio.

0.    RELIGIOUS ACTIVITIES

1.    The Jail provides a Chaplain for inmates who desire individual counseling. The Jail Chaplain may be contacted by submitting a "Request Form".

2.    If an inmate wishes to see his/her own minister, it is up to the inmate to contact him/her. The Jail Chaplain and Special Services Division Lieutenant must first clear all visiting clergy.

P.    SPECIAL REQUEST

1.    Inmate may make a written request for reconsideration of housing assignments, reclassification, and other requests through the use of the "Inmate Request Form" made available by staff.

Q.    TELEPHONES

1.    Telephones are available in each housing area. The telephones will be turned on after inmates have left for Court and the Housing Units have been cleaned. The phones will be turned off at approximately 10:00 p.m.

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>10 of 16 |
|---|---|---|

2.   All local and long distance telephone calls are either collect or made using a phone card purchased through commissary.

3.   All calls (except those to attorneys) are subject to monitoring recordings.

    a.   Pick-up the receiver, listen and follow the instructions.
    b.   Calls will be limited to ten minutes each when another inmate wishes to use the phone.
    c.   Inmates in housing may not use the phones in booking except for verified family emergency or at the discretion of the Watch Commander.

4.   Inmates may use money from their inmate account to purchase telephone time that can be used to make telephone calls from the jail in lieu of placing a collect call.   This also provides access for international calling.

5.   All inmates will be allowed to order telephone time once per week unless that privilege is withheld due to a disciplinary situation.

6.   Telephone cards can be purchased through Commissary.

    a.   There will be no limit on the amount of telephone time an inmate may purchase providing that he/she has sufficient funds to cover his/her order.

    b.   If the inmate does not have enough money on his/her account to cover the Commissary order and inmate debit calling order, the Commissary order will be filled first.

    c.   Inmates purchasing telephone time will be given a Personal Identification Number (PIN). This number will consist of the inmate's 6-digit "S" number plus four randomly assigned numbers.

    d.   Telephone time is not intended to be traded, sold, bartered or used by other inmates and is meant to be used only by the purchaser.

    e.   Costs of calls and account balances are reported at the beginning of each call.

    f.   Using inmate telephones for the purpose of annoying or harassing is a crime.

    g.   Inmates will be able to get the balance on their debit calling account by entering their PIN into any jail inmate phone.

7.   An inmate may request a refund, after their release from jail, of any unused telephone time ($1.00 or more) by submitting a request in writing to Santa Cruz County Jail.  A post card for this purpose will be available from Jail Staff and

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>11 of 16 |
|---|---|---|

at the front Jail Reception counter for distribution upon request. *If the request for refund is received by Santa Cruz County Jail, after thirty (30) days of this jail's documented release date, the refund will not be issued.*

R.    TELEVISION

1.    The specific times televisions are turned on will be determined by the Detention Staff and may include such considerations as: Cleanliness of housing unit, programming, day of week, holidays, etc.

2.    Volume of television will be turned down during meals, medication rounds and at the officer's discretion.

S.    TRANSFER TO CALIFORNIA DEPARTMENT OF CORRECTIONS
(San Quentin Memorandum 8/04)

To inform all inmates who are to be remanded to the custody of the California Department of Corrections, San Quentin, of the policies and procedures regarding your property.

Any personal property items that do not meet the criteria as established in this procedure, shall be disposed of in one of the following manners before you transfer to San Quentin:

a.    Released to a friend or relative.
b.    Donated to a charitable organization.
c.    Donated to the institution.
d.    Discarded.

Property allowed includes:
a.    Legal books and material (No hardbound books).
b.    U.S. Postage stamps and stamped envelopes, not to exceed 20.
c.    Receipts, address books, business cards, etc.
d.    One (1) writing tablet, (spiral notebooks will have wire removed).
e.    Personal letters, loose photos
f.    Religious medal, (less than $50.00 value) No set stones.
g.    Wedding rings, plain only with no set stones and a value less that $100.00.
h.    All medical devices, aids and prosthetics. Returned after being checked by medical staff.
i.    Prescription eyeglasses, with case. No metal clips.
j.    Medical Alert Identification (No chains).
k.    Up to five (5) soft cover books
l.    House slippers or sandals
m.    Athletic shoes – primarily white

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>12 of 16 |
|---|---|---|

All other items will be confiscated and disposed of per the aforementioned procedures. The above procedures will be strictly adhered to. THERE WILL BE NO EXCEPTIONS.

T.    VISITING

1.    Visiting is a privilege for the inmate that allows them to be reunited with their families and/or friends. The intent of these visits is to maintain the family unit and to provide emotional support for the inmate while allowing socially acceptable interaction. The following guidelines are provided to ensure that all parties have a successful visit. Failure to comply with these guidelines will result in the immediate revocation of the visiting privilege.

2.    Inmates must complete a Visitor Request Form completely before any visits will be allowed. The visitor list can be updated only once every 30 days from the date the original list was completed. Visitors must be pre-approved by staff before they can schedule a visit.

3.    Visiting takes place as follows:

   ➢ General Population Inmates – Saturday, Sunday, Wednesday & Friday
   ➢ Isolation, Administrative Segregation – Monday, Tuesday, & Thursday
   ➢ Hours: 9:00 – 10:00 A.M.    10:00-11:00 A.M.    1:30-2:30 P.M.
                   2:30-3:30 P.M.    3:30-4:30 P.M.

   Visits are approximately 50 minutes long.

4.    Visitors may call 24-72 hours before the visit and pre-register for their visiting time. The visitors must check in 30 minutes before their visiting time. Failure to appear for a scheduled visit will count as a visit.

5.    If there is a visitor coming from out of the area (120 miles or more from Santa Cruz County) he/she does not have to be on the inmate visitor request form. The inmate and/or potential visitor must contact the on duty Watch Commander and request a visit. This may occur only if the Watch Commander approves (in advance), and the inmate has not received his/her maximum visits for the week, and if the visitor possesses identification to verify out of area residency.

6.    Clothing can be personally expressive, but cannot be provocative in nature or design. This must include clothing that covers all genital areas, buttocks, and breasts. Clothing worn by the visitor(s) should be appropriate for family visiting environment.

7.    During the visit proper conduct will be necessary.

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>13 of 16 |
|---|---|---|

8. Lockers are provided for visitors use. All personal items are to be placed in the locker.

9. Visitors are required to present valid identification prior to the start of the visit. Valid driver's license, California identification card, passports, military identification and immigration identification are acceptable forms of identification.

10. All visitors must be 18 years of age or be accompanied by a parent or legal guardian. The adult must stay with the underage person during the entire visit. A birth certificate must be shown on the first visit.

11. Inmates housed in "Q" or dressed in yellow (security/safety risk) will have visits with their attorney in rooms 1,2 and 3 only. No contact visits are allowed unless by written authorization by Jail Commander.

12. Visitors who violate any proper procedure of the visiting process may be banned from entering the facility either temporarily or permanently or, depending on the violation, criminally charged.

U. VOTING

1. Inmates serving a sentence for the conviction of a felony or who are on parole do not have voting rights under California Elections Law.

2. Voting by inmates in the County Jail Facilities will be by mail ballot.

    a. For inmates eligible to vote but not registered, registration cards will be provided upon request. Voter registration cards must be received by the Registrar of Voting 15 days prior to any election.

    b. For inmates already registered to vote, they must mail in their request for a Vote-By-Mail Ballot application giving the jail facility where they are housed, as a return address.

        1. Request for Vote-By-Mail Ballot must be received by the Registrar of Voting not later than 7 days prior to the election.

    c. A Vote-By-Mail Ballot may be obtained by having someone bring a signed authorization request from the inmate requesting an absentee ballot to the Registrar of Voting. The ballot will be delivered to the jail facility and forwarded to the inmate by the staff.

    d. Inmates who complete the ballot will submit it to the staff. The ballots will be sent to the Registrar of Voting via inter-office mail.

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>14 of 16 |
|---|---|---|

      1.      The Registrar of Voting must receive all completed ballots by 8:00 on the close of Election Day.

II.    Discipline

    A.    Disciplinary Action will be imposed for acts committed or omitted in violation of Facility Rules and Regulations.

    B.    In cases of criminal acts, offenders will be arrested and investigative reports referred to the District Attorney's Office for prosecution.

    C.    Violation of Facility Rules and Regulations or additional criminal charges will be considered for classification, housing and work assignments and recreational activities.

    D.    Copies of Disciplinary Actions will be provided to the Probation Department for Pre-Sentence reports to the Courts and other Detention Facilities if you are transferred, i.e. California Department of Corrections.

    E.    Disciplinary citations will be issued to inmates for violating Jail Rules and Regulations of a minor nature.

III.    Inmate Rules and Regulations

    A.    The following is a list of inmate rules and regulations.  Any violation can result in discipline.  Violations include but are not limited to:

      1.    Failure to keep cell, dayroom and patio areas clean.
      2.    Littering.
      3.    Failure to be responsible for Jail issued items or to alter or damage any Jail issued items.
      4.    Taking property other than legal papers outside of the housing area without authorization.
      5.    Placing any pictures or material on facility walls or windows.
      6.    Storage of food other than commissary items in the living area.
      7.    No inmate shall have in his housing area any more than the following at any time:

            a.    One newspaper.
            b.    Two magazines or periodicals.
            c.    One paperback dictionary.
            d.    Five paperback books, NO HARDBOUND BOOKS.
            e.    No more than a reasonable number of clippings.
            f.    One razor.
            g.    One comb.
            h.    One toothbrush.
            i.    Two pens and two pencils.

| Detention Procedure #3-2 | Subject:<br>Inmate Orientation, Rules and Regulations | Page:<br>15 of 16 |
|---|---|---|

j.     Two toothpaste tubes.

8.    Failure to be appropriately dressed outside of housing area, minimally wearing long pants and a shirt.

9.    Except while in the shower, failure to have buttocks, genital area and (for female inmates) breasts covered by appropriate article of clothing.

10.    Transfer or exchange to another inmate, without staff authorization, any article of Jail issue or any other item.

11.    The use of abusive or disrespectful language to any person.

12.    Disruptive behavior during visits, interviews, programs, court appearances or other activities.

13.    Misuse of any emergency alarm in the facility.

14.    Removal, tampering, destruction, or alteration of your I.D. wristband.

15.    Tampering with the television, telephone, hot water pots or electrical outlets.

16.    Unauthorized bed or cell changes.

17.    Possession of extra jail issue.

18.    Possession of an altered razor.

19.    Unauthorized communication between inmates.

20.    Possession, smuggling or attempted smuggling of any contraband into or within the facility. Contraband is any item not issued or authorized by the Jail. Inmates who bring or assist in bringing contraband or possess contraband, may be prosecuted.

21.    Destruction or defacing of Jail property, including but not limited to walls, windows, television, telephones, hot water pots, etc.

22.    Quarreling, threatening to fight or fighting with inmates or staff.

23.    Making or possession of any intoxicant.

24.    Willful and malicious conduct that causes injury to others or destroys property.

25.    The burning of any material.

26.    The flooding or stopping-up of Jail plumbing.

27.    The misuse of Law Library service.

28.    It is a felony to escape, attempt to escape or the aiding or abetting of any escape by any person.

29.    Destruction or tampering with doors, locks, screens, or any other security devices.

30.    Refusal to work.

31.    Abuse or hoarding of medications.

32.    Making or possession of a weapon.

33.    Disobeying a lawful order of the staff.

34.    Violations of any local, State or Federal Law.

35.    Possession of any item, contraband or issued, being used for tattoos.

36.    Defacing of jail property with graffiti, including but not limited to walls, windows, bunks, chairs, etc.

37.    Possession of material relating to gangs, hate crimes or tattoo patterns. Includes hair and eyebrow cuts.

38.    Engaging in any sexual activity.

| Detention Procedure #3-2 | Subject: Inmate Orientation, Rules and Regulations | Page: 16 of 16 |
|---|---|---|

39. Body piercing and using items to keep piercing open. Items such as pieces of comb, straw, string etc. will be considered jewelry and will be considered contraband.
40. Giving, receiving tattoos or possession of any tattoo related items.
41. Using cleaning equipment for exercise.
42. Looking out the dayroom or patio windows (into the area of the officer's work station (satellite), or looking out toward other housing units).

## IV. Disciplinary Actions

A. "Major violations or repetitive minor acts of non-conformance or repetitive minor violations of institutional rules charges pending against an inmate shall be acted on no sooner than 24 hours after the report has been submitted to the disciplinary officer and the inmate has been informed of the charges in writing. A violation(s) shall be acted on no later then 72 hours after an inmate has been informed of the charges(s) in writing. The inmate may waive the 24-hour limitation. The hearing may be postponed or continued for a reasonable time through a written waiver by the inmate or for good cause."

B. The following is a list of disciplinary actions for violations of the rules and laws. The list includes but is not limited to:

1. The loss of commissary privileges.
2. A change in work assignment.
3. The loss of exercise, recreation or other programs.
4. Extra duty work.
5. An oral or written reprimand to be included in the inmate's personal folder.
6. The loss of television privileges.
7. Withdrawal of personal funds to pay for damaged issue.
8. The forfeiture of accrued good time or work time.
9. The loss of telephone privileges.
10. The loss of visiting privileges.
11. Disciplinary segregation or isolation.
12. Special Disciplinary Isolation Diet.

_Len Lofano, Chief Deputy_                 3-25-05

Len Lofano, Chief Deputy                 Date

INMATE GRIEVANCE FORM
QUEJAS DEL RECLUSO(S)

Inmates Name: **Isaac Valdivia**    Date: **4-1-06**    S#: **065524**
Nobre De Recluso:                   Fecha:

Housing Unit: **C**    Persons Involved: (1) **Medical**
Seccion:               Persona(s)
                       Involucradas: (2) **STaff**

(3) _____

(4) _____

Grievance:
Quejas:

I, Isaac Valdivia was saverly hurt and cut on March 18TH of 2006 while i was incarserated in your faciatte and because of that reason, I was treated in your medical faciatte, I was charge for medical attention while i got hurt in your JAIL and i also got ex-rays witch i have not get got the resault to my injuries, i feel that my hand left hand is dislocated. i feel violated of my rights by ignoring me by not telling my resault's that's why i decided to seell outside medical attention or be eligible for sheriff perole or suspention of my remainding time, so that i could see my own Doctor, please dont ignore this plee like my blue slip's thank-you for your time and will wait for resault's your respon's shorly, I am Hurt Help.

March 1.2006

Isaac Valdivia

Inmates Signature: _____
Firma De Recluso:

EXHIBIT **C**, Page **1** of **2**

*medical*

~~DETENTION~~ STAFF ONLY

DETENTION OFFICER FINDINGS/RECOMMENDATIONS:_____

After your altercation on 3-18-06 you were housed in "O". You were seen by DR on 3-20/ 3-23/ 3-27. No charges were made. You submitted a Blue Slip on 3-28 and saw the DR on 3-30 for a different complaint unrelated to the altercation. You will be transported this week for your foot X Rays.

SIGNATURE: _Thomassny_    ~~BADGE NO~~. _____ DATE: _4-3-06_

SUPERVISING DETENTION OFFICER FINDINGS/ RECOMMENDATIONS:_____

SIGNATURE:_____ BADGE NO._____ DATE:_____

WATCH COMMANDER REVIEW AND DISPOSITION:_____

SIGNATURE:_____ BADGE NO. _57_ DATE: _4-3-06_

DISTRIBUTION:    ( ) ORIGINAL, FACILITY COMMANDER    ( ) INMATE
( ) INMATE HOUSING FILE    ( ) OTHER_____

EXHIBIT _C_, Page _2_ of _2_

INMATE GRIEVANCE FORM
QUEJAS DEL RECLUSO(S)

Inmates Name: _Isaac Valdivia_    Date: _4-5-06_  S#: _0655-2_
Nobre De Recluso:    Fecha:

Housing Unit: _C_    Persons Involved: (1) _Cristina the nurce_
Seccion:    Persona(s)
   Involucradas:    (2) _Staff medical_

   (3) _____

   (4) _____

Grievance:
Quejas:

I whent to the medical unit for my
problin da to my hand inssuey and cristina
the Nurce ask officer Flores about my hand
and they were making real bad jokes and
Remmacks about my hands and I told them
not to laughee about my problim and they
still continue to be a joke to them, I have
been sent about this problim before and I have
hade to different nurces tell me different
things to do with my hand. All I whant is
my hand to git bether and take me more
serieg because I feel that your staff is
very unprofecional because they tell me
different things and make jokes about my
medical problem they keep assuming that I mess
up my hand some where else and officer
Hernandez maid it even that I did not
hurt my hand some where else. I got hurt
here in your facility, please take me more serios
or I need out side treatments Now.

Inmates Signature: _Isaac Valdivia_
Firma De Recluso:

_4-5-06_

DET-1060 12/97

~~DETENTION~~ STAFF ONLY

DETENTION OFFICER FINDINGS/RECOMMENDATIONS:

I talked with you on 4-4-86 and place you on clinic call 4-5-06. The provider saw you and did start you on a trial of naproxen & flexeral. If those medications are not working you need to inform us.

SIGNATURE: _Thomsen_   BADGE NO. _____   DATE: 4-10-06

SUPERVISING DETENTION OFFICER FINDINGS/ RECOMMENDATIONS:

Refer to A1 sco.

SIGNATURE:_____ BADGE NO._____ DATE:_____

WATCH COMMANDER REVIEW AND DISPOSITION:_____

Refer to Abve notes.

SIGNATURE:_____ BADGE NO. _532_ DATE: 4-11-08

DISTRIBUTION: ( ) ORIGINAL, FACILITY COMMANDER   ( ) INMATE
( ) INMATE HOUSING FILE   ( ) OTHER_____

EXHIBIT _D_, Page _2_ of _2_

INMATE GRIEVANCE FORM
QUEJAS DEL RECLUSO(S)

Inmates Name: _Isaac Valdiva_    Date: _____    S#: _06552_
Nobre De Recluso:                              Fecha:

Housing Unit: _C_    Persons Involved: (1) _Medical_
Seccion:                Persona(s)
                        Involucradas:    (2) _____

                                         (3) _____

                                         (4) _____

Grievance:
Quejas:

I Feel My GRieVANce waS
Not ANSewerd Right So
Can you give me a
ANSewer on It Thank!

It was Nothing To Do
with If My Meds are
working or Not Its
MaiNly That YOuR Staff
aint doing There Job
Right and I will
Like To See My OwN
Doctor From The Streets.
So IF you could Set
a Court Date So I
could get a Stay OF
ExcuTen.

                         _Isaac Valdivi W_
                         _April 4 06_

Inmates Signature: _____
Firma De Recluso:

DET-1060 12/97

DETENTION STAFF ONLY

DETENTION OFFICER FINDINGS/RECOMMENDATIONS:_____

As per our conversation today please submit request for stay to your lawyer or custody.

SIGNATURE: _Thomasley_   BADGE NO._____   DATE: 4-12-06

SUPERVISING DETENTION OFFICER FINDINGS/ RECOMMENDATIONS:_____

SIGNATURE:_____   BADGE NO._____   DATE:_____

WATCH COMMANDER REVIEW AND DISPOSITION: Concurs with the recommendation of contacting your attorney

SIGNATURE: _Summers WC_   BADGE NO. X-6   DATE: 4-12-06

DISTRIBUTION:  ( ) ORIGINAL, FACILITY COMMANDER     ( ) INMATE
               ( ) INMATE HOUSING FILE               ( ) OTHER_____

EXHIBIT  E , Page  2  of  2

## INMATE GRIEVANCE FORM
### QUEJAS DEL RECLUSO(S)

Inmates Name: **Isaac Valdivia**   Date: **4-13-06**   S#: **06 55**
Nobre De Recluso:                   Fecha:

Housing Unit: **C**   Persons Involved: (1) **m.s. ArmenTA**
Seccion:             Persona(s)
                     Involucradas: (2) _____

                                   (3) _____

                                   (4) _____

Grievance:
Quejas:

This grievance is on STAFF Disrespecting inmates By ordering them around in a manner widhes is agresive and disrespectful giving a warning, and a threatavi "order" are two differant thing's, If m.s. ArmenTa can't be coutea and respectful then maybe SHE should NOT Work or do her duty in a men's unit.

*Isaac Valdiv* W

4-13-06

: To be put in report :

Inmates Signature: _____
Firma De Recluso:

DET-1060 12/97

EXHIBIT **F**, Page **1** of **2**

DETENTION STAFF ONLY

DETENTION OFFICER FINDINGS/RECOMMENDATIONS:_____

Inmate was seen by me in the dayroom without a wristband on. I asked him calmly to put his wristband on. He looked at me and said "ok" and continued to sit there. I calmly asked him again to put his wristband on. He said "ok, i will" and again continued to sit there. When I asked the inmate a third time to put his wristband on I elevated my voice to gain compliance.

K. Armenta 79

SIGNATURE:_____ BADGE NO._____ DATE:_____

SUPERVISING DETENTION OFFICER FINDINGS/ RECOMMENDATIONS:_____

— CO Armenta told me Valdivia refused to comply with a direct order to wear his wristband. She had to use a stern voice to obtain compliance from

SIGNATURE: _J. Buchanan_____ BADGE NO. _15_ DATE: _4-15-06_

WATCH COMMANDER REVIEW AND DISPOSITION:_____

You are required to wear you wristband at all times. You have a recent prior for not wearing your wristband. Officer Armenta was being lenient by giving you several warnings instead of a citation. A courteous response on your part to comply with her request will avoid a reply that you perceive to be disrespectful.

SIGNATURE: _M. Jones_____ BADGE NO. _534_ DATE: _4/15/06_

DISTRIBUTION:  ( ) ORIGINAL, FACILITY COMMANDER      ( ) INMATE
               ( ) INMATE HOUSING FILE               ( ) OTHER_____

EXHIBIT _F_ , Page _2_ of _2_

INMATE GRIEVANCE FORM
QUEJAS DEL RECLUSO(S)

Inmates Name: _Isaac Valdivia_    Date: _4/14/06_  S#: _065524_
Nobre De Recluso:                Fecha:

Housing Unit:_C_    Persons Involved: (1)_MEDICAL_
Seccion:            Persona(s)
                    Involucradas:    (2)_____

                                     (3)_____

                                     (4)_____

Grievance:
Quejas:

_I SUBMITTED A BLUE MED. SLIP FOR ATTENT._
_TO MY HAND AND RESULTS ON MY FOOT. ALSO_
_TO COMPLAIN OF THE MEDICATION._
_THIS WAS OVER A WEEK NOW AND I NEED_
_MEDICAL ATTENTION TO THESE PROBLEMS AND_
_INJURIES RECIEVED MARCH 18, 2006._

Inmates Signature: _Isaac Valdivia_
Firma De Recluso:

DET-1060 12/97

EXHIBIT G , Page 1 of 2

~~DETENTION STAFF ONLY~~

DETENTION OFFICER FINDINGS/RECOMMENDATIONS:_____

*You are in clinic call Today make Sure you tell all of your complaints to the provider*

SIGNATURE: _Thomasey_    BADGE NO. _____ DATE: _4·17·06_

SUPERVISING DETENTION OFFICER FINDINGS/ RECOMMENDATIONS:_____

SIGNATURE:_____ BADGE NO._____ DATE:_____

WATCH COMMANDER REVIEW AND DISPOSITION:_____

_REFER ABOVE_

SIGNATURE:_____ BADGE NO. _S-32_ DATE: _4-17.06_

DISTRIBUTION:  (✔) ORIGINAL, FACILITY COMMANDER    (✔) INMATE
               (✔) INMATE HOUSING FILE              ( ) OTHER_____

EXHIBIT _G_, Page _2_ of _2_

INMATE GRIEVANCE FORM
QUEJAS DEL RECLUSO(S)

Inmates Name: _Isaac Valdivia_    Date: _4/19/06_  S#: _065524_
Nobre De Recluso:                 Fecha:

Housing Unit:_____    Persons Involved: (1) _Medical Staff_
Seccion:               Persona(s)
                       Involucradas:   (2)_____

                                       (3)_____

                                       (4)_____

Grievance:
Quejas:

_____I continue to complain about my pain
and it is still an issue for me. where I
need stronger medication._

Inmates Signature:_____
Firma De Recluso:

DET-1060 12/97

~~DETENTION~~ STAFF ONLY

DETENTION OFFICER FINDINGS/RECOMMENDATIONS:_____

I have answered 4 grievances on this same subject - now if your present medication is not working please submit a blue slip.

SIGNATURE: _Phomasy_    ~~BADGE NO.~~    DATE: _4 20 06_

SUPERVISING DETENTION OFFICER FINDINGS/ RECOMMENDATIONS:_____

SIGNATURE:_____  BADGE NO._____  DATE:_____

WATCH COMMANDER REVIEW AND DISPOSITION: _Contents Noted._

SIGNATURE:_____  BADGE NO. _533_  DATE: _4-20-06_

DISTRIBUTION:  ( ) ORIGINAL, FACILITY COMMANDER    ( ) INMATE
                       ( ) INMATE HOUSING FILE    ( ) OTHER_____

EXHIBIT _H_, Page _2_ of _2_