KATE WELLS, CSB# 107051
2600 Fresno Street
Santa Cruz, California 95062
Telephone: (831) 479-4475
Facsimile: (831) 479-4476
Email Address: lioness@got.net

AARON LODGE, CSB#220670
1414 Soquel Avenue, Suite 212
Santa Cruz, California 95062
Telephone: (831) 600-3030
Facsimile: (831) 603-4300
Email Address: alodge@teachjustice.com

Attorneys for Plaintiff, ISAAC VALDIVIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### E-FILING CASE

|  |  |
|---|---|
| ISAAC VALDIVIA | CASE NO.  C08-00916 JF |
| Plaintiff, | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| vs. | |
| COUNTY OF SANTA CRUZ; STEVE ROBBINS; TEN UNKNOWN CORRECTIONAL OFFICERS; TEN UNKNOWN OTHER COUNTY EMPLOYEES, | |
| Defendants. | Date: June 27, 2008<br>Time: 10:00 a.m.<br>Courtroom: 3<br>Honorable Jeremy Fogel |

## I.  INTRODUCTION

Defendant County of Santa Cruz has filed a motion to dismiss alleging that the plaintiff's complaint should be dismissed due to the fact that plaintiff failed to exhaust his grievance remedies at the Santa Cruz County jail, specifically that plaintiff failed to appeal the denials of the grievances he filed and that he never filed grievances regarding the failure to protect and failure to train and supervise claims.  Defendant contends that such exhaustion is required by the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997 e(a).

1    It is plaintiff's position that said exhaustion requirement is not relevant in this case since

2  plaintiff was not a prisoner when he filed this action.  Furthermore, plaintiff alleges that to impose such

3  a requirement on persons in plaintiff's position would be a denial of due process in that (1) there is no

4  evidence that plaintiff was made aware of the grievance appeal procedure; (2) plaintiff's grasp of

5  English is limited and he is not well- educated nor was he represented by counsel at the time; (3)

6  plaintiff did not know and defendants did not explain to plaintiff the dire consequences that would

7  result should he fail to appeal his grievances; (4) plaintiff was at the facility for only a month after he

8  was brutally attacked and as such there was not sufficient time to pursue the grievance appeal

9  process; (5) there is no law library at the jail where he could have discovered the exhaustion

10  requirements; and (6) plaintiff was, and still is,  suffering from a brain concussion which has impaired

11  his mental faculties  Finally, Plaintiff alleges that even if said exhaustion requirements were necessary,

12  plaintiff fulfilled the requirements by filing multiple grievances regarding the same issue regarding failure

13  to treat his substantial medical needs.

14                    **II.  FACTUAL ALLEGATIONS**

15    Plaintiff alleges in his complaint that despite his numerous warnings to defendants that he

16  should not be placed in an active gang unit at the jail due to the fact that he had renounced his gang

17  affiliation and would suffer severe injury if so placed, the defendants deliberately ignored his warnings

18  that he would suffer substantial harm and placed him in a unit with active gang members.  Shortly after

19  placing him in the unit, on March 18, 2006, plaintiff suffered a severe beating at the hands of the gang

20  members.  The injuries plaintiff suffered included, but were not limited to,  a severe brain concussion,

21  a slash across plaintiff's face requiring numerous stitches and a severely broken left hand.  Plaintiff is

22  still suffering from the effects of the beating in that he has lost use of his left hand (he is left-handed)

23  and has impaired mental capacity as a result of the injury to his brain.

24    After plaintiff was released from the hospital and returned to the COUNTY jail, he continued

25  to suffer severe pain as a result of the beating.   Plaintiff filed several grievances alleging that the jail

26  was not giving him adequate medical care.  On April 1, 2006, he filed a grievance complaining that he

27  was not receiving adequate medical attention.  On April 12, 2006, plaintiff filed a grievance stating

28  that his previous grievance regarding lack of medical care was "not answered right."   He filed two

1   more grievances regarding the lack of medical attention on April 14 and April 19, 2006. He was

2   released from the jail on April. 24, 2006, five days after his last grievance was lodged.

3                                   **III.  LEGAL STANDARDS**

4            Under Federal Rule of Civil Procedure 12(b)(6), the sufficiency of the complaint is tested

5   with regard to the applicable standard in FRCP 8(a), which requires simply that a pleading setting

6   forth a claim for relief contain a short and plain statement of the claim showing that the pleader is

7   entitled to relief        The question presented by a motion to dismiss is not whether the plaintiff will

8   prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.

9   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  If a plaintiff colorably states facts which, if proven,

10  would entitle her to relief, a motion to dismiss for failure to state a claim should not be granted.

11           In answering this question, the Court must assume that the plaintiff's allegations are true,

12  including all facts alleged on information and belief, and must draw all reasonable inferences in the

13  plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Even if the face

14  of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to

15  develop the case at this stage of the proceedings. *United States v. City of Redwood*, 640 F.2d 963,

16  966 (9th Cir. 1981).  On a motion to dismiss, a federal court presumes that general allegations

17  embrace those specific facts that are necessary to support the claim.  *Lewis v. Casey*, 135 L.Ed 2d

18  606, 116 S.Ct. 2174 (1996). Any existing ambiguities must be resolved in favor of the pleading.

19  *Walling v. Beverly Enterprises,* 476 F.2d 393,396 (9th Cir.1973).

20           FRCP 12(b)(6) motions are looked upon with disfavor by the courts and are granted

21  sparingly and with care.  The main reason for this disfavor is the basic precept that the primary

22  objective of the law is to obtain a determination on the merits of the claim, and that accordingly, a

23  case should be tried on the proofs rather than on the pleadings. *Rennie & Laughlin, Inc. v. Chrysler

24  Corp.*, 242 F.2d 208 (9th Cir. 1957); *Buchler v. United States*, 384 F.Supp. 709 (E.D. Cal.

25  1974).

26                                   **IV.  ARGUMENT**

27           **A.  The PLRA Exhaustion Requirements Do Not Apply to Plaintiff Because He**

28

1    **Was Not Incarcerated at the Time He Filed This Action.**

2    The plain language of the relevant section of the Prison Litigation Reform Act (PLRA)

3    provides that "no action shall be brought with respect to prison conditions under 42 U.S.C. § 1983,

4    or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

5    such administrative remedies are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA

6    explicitly defines a prisoner as follows: "As used in this section [42 U.S.C. § 1997e], the term

7    'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of,

8    sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of

9    parole, probation, pretrial release, or diversionary program. 42 U.S.C. § 1997e(h). (Also see 28

10   U.S.C. §1915(h) - same definition of "prisoner" in relation to proceedings *in forma pauperis*).

11   In *Page v. Torrey,* 201 F.3d 1136, 1140 (9th Cir. 2000), the Ninth Circuit held that the

12   PLRA statute should be strictly construed as only applying to those who are incarcerated and not

13   civilly committed at the time of the inception of the lawsuit. The court explained that "only individuals

14   **who, at the time they seek to file their civil actions are detained** as a result of being accused of,

15   convicted of, or sentenced for criminal offenses are prisoners within the definition of . . . 28 U.S.C. §

16   1915." (Emphasis added) The court found that the "natural reading" of the text **"**is that, to fall within

17   the definition of 'prisoner', the individual in question must be currently detained as a result of

18   accusation, conviction, or sentence for a criminal offense."

19   Defendants argue that the Ninth Circuit's decision in *Page* has been superceded by two more

20   recent Supreme Court decisions: *Booth v. Churner*, 532 U.S. 731(2001) and *Porter v. Nussle*,

21   534 U.S. 516 (2002). However neither *Booth* nor *Porter* consider whether the PLRA's exhaustion

22   requirements applied to suits filed by former inmates. Instead, both cases involved inmates who were

23   incarcerated at the time they filed suit. Furthermore, the Ninth Circuit continued to apply the "plain

24   meaning of the words" interpretation of the exhaustion statute in *Roles v. Maddox*, 439 F.3d.1016,

25   1017, (9th Cir. 2006) a case that postdates both *Booth* and *Porter*. In the *Roles* case, where the

26   issue is whether or not the statute applies to persons incarcerated in private prisons, the Ninth quotes

27   the Supreme Court holding in *Moskal v. United States,* 498 U.S. 103, 108, that "In determining the

28

1  scope of a statute, we look to its language, giving the words their ordinary meaning." The Ninth

2  found that "The plain language of § 1997e(a) makes clear that the exhaustion rule is to apply to all

3  prisons, state owned or otherwise."

4        As such, although the Ninth Circuit has not specifically ruled on this precise issue, it is clear

5  that it is their intent to apply the plain and natural meaning of the text to the exhaustion statute,  *i.e.*

6  that the statute does not apply to those individuals, like plaintiff herein, who were not incarcerated at

7  the time they filed the lawsuit.  While a few district court decisions have held that the statute requires

8  former inmates to exhaust administrative remedies before filing suit[1], many other district courts have

9  explicitly rejected such arguments.   See *Krittenbrink v. Crawford,* 313 F. Supp. 2d 1043 (D. Nev.

10  2004); *Schwartz v. Snohomish County,* Case No. C05-732P, *slip op.,* 2006 WL 692024 (W.D.

11  Wash., March 17, 2006);   *Thomas v. Baca,* 2005 WL 697986 (C.D. Cal. March 23, 2005);

12  *Wilson v. Hampton County,* 2005 WL 2877725 (D.S.C. October 31, 2005); *Black v. Franklin*

13  *County,* 2005 WL 1993445 (E.D. Ky. Aug. 16, 2005); *Canady v. Werholtz,* 2004 WL 1212050

14  (D. Kan. June 1, 2004); *Gibson v. Brooks,* 335 F.Supp.2d 325 (D.Conn. 2004).

15        In *Kritenbrink,* supra at 1046-48, the Nevada district court thoughtfully considered the case

16  law regarding PLRA exhaustion requirements, including both of the Supreme Court cases,  *Booth*

17  and *Porter,* and concluded that the court was compelled to follow the principle espoused by the

18  Ninth in the *Page* case to strictly construe the statute as applying only to persons who are

19  incarcerated at the time of filing.  (See also *Agyeman v. INS,* 296 F. 3d (9th Cir. 2002)).

20        More importantly, **every federal appellate court circuit in the United States that has**

21  **ruled on  the issue has found that the PLRA exhaustion requirements do not apply to a**

22  **plaintiff who was not incarcerated at the time of the filing of his or her lawsuit.**  This body of

23  law includes a majority of decisions issued after the Supreme Court's rulings in *Booth* and *Porter.*

24  See the following cases: *Medina-Claudio v. Rodriguez-Mateo,* 292 F.3d. 31, 35 (1st Cir. 2002);

25

26  _____

    1

27  See *Morgan v. Maricopa County,* 259, F. Supp.2d 985 (D. Ariz 2003); Mason v.
    County of San Mateo, 2005 US Dist. LEXIS 1223 (N.D. Cal. Jan. 26, 2005);

28  *Reyes v. State,* 2005 WL 1459662 (D. Or. June 21, 2005).

1    *Grieg v. Goord*, 169 F.3d 165, 167 (2nd Cir. 1999); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3rd

2    Cir. 2003); *Michau v. Charleston County, S.C.,* 434 F.3d 725, 727-28 (4th Cir. 2006); *Jackson*

3    *v. Johnson,* 475 F.3d 261 (5th Cir. 2007);  *Cox v. Mayer,*  332 F.3d 422, 424-25 (6th Cir. 2003);

4    *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004); *Nerness v. Johnson,* 401 F.3d 874, 876 (8th

5    Cir. 2005); *Norton v. City of Marietta,* 432 F.3d. 1145, 1150-51 (10th Cir. 2005).  *Troville v.*

6    *Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002); and *La Fontant v. INS*, 135 F.3d 158, 165 (D.C.

7    Cir. 1998).

8        In the *Michau* case, supra, the defense therein claimed that even though the plaintiff was not

9    incarcerated at the time of the filing of the lawsuit, the PLRA requirements should still apply since he

10   had filed grievances while he was incarcerated.  The Fourth Circuit held that it did not matter whether

11   or not the plaintiff had filed grievances while incarcerated, the exhaustion requirements, by the plain

12   meaning of the statute,  applied only to those incarcerated at the time of filing.

13        The rationale for treating former prisoners differently than those presently incarcerated is

14   stated in most, if not all,  of the appellate cases cited above - that prisoners "have an abundance of

15   time, while facing a restricted number of enjoyable activities with which to pass the time other than

16   filing suits." *Witzke,* supra at p 750.  See also *Greig,* supra at p. 167 and *Norton,* supra at p. 1150-

17   51.   Economic factors have also been cited by the courts as a factor since filing fees are waived for

18   prisoners whereas former prisoners enjoy no such privilege.  In *Kerr v. Puckett,* 138 F.3d 321, 323

19   (7th Cir.1998) the court stated  "Congress deemed prisoners to be pestiferous litigants because they

20   have so much free time on their hands and there are few costs to filing suit." Once a prisoner is

21   released, however, "[o]pportunity costs of litigation rise . . ., diminishing the need for special

22   precautions against weak suits." *Kerr,* 138 F.3d at 323.

23        As one court has stated:

24          This Court is not empowered to expand the meaning of a congressional
           enactment in order to accomplish policy objectives that lie beyond the
25         plain meaning of the text.  The words contained in the PLRA are unambiguous.
           The exhaustion requirement applies to those actions brought by a 'prisoner
26         confined in any jail, prison, or other correctional facility.' [citation omitted]
           Had Congress intended to preclude suits brought by former inmates, it could
27         have written the exhaustion provision to do so.  It did not.

28

1  *Thomas v. Baca,* WL 697986 * 3 (C.D.Cal. March 23, 2005)

2       As such, the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, and

3  D.C. Circuits have all come to the same conclusion that the PLRA exhaustion requirements do not

4  apply in cases such as the instant case where plaintiff was not incarcerated at the time of the filing of

5  the lawsuit. In fact, the plaintiff has not found one federal appellate level court case that holds that a

6  former prisoner is subject to the exhaustion requirements under the PLRA.[2]   By the overwhelming

7  weight of authority and the plain meaning of the terms contained in the statute, the exhaustion

8  requirements do not apply to the plaintiff herein because he was not a "prisoner confined" in a

9  correctional facility at the time he filed the instant lawsuit.

10       **B.       The Exhaustion Requirement Does Not Apply to Plaintiff Because No**

11               **Remedy was Available During the Relevant Time Period**

12       In *Brown v. Valoff,* 422 F.3d 926, 935, (9th Cir. 2005) the Ninth Circuit analyzed the

13  PLRA exhaustion requirement as described by the Supreme Court in *Booth,* supra.

14  ". . . *Booth* made quite clear that the statutory language does not require exhaustion when *no*

15  pertinent relief can be obtained through the internal process."   "The obligation to exhaust 'available'

16  remedies persists as long as *some* remedy remains 'available'. Once that is no longer the case, then

17  there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance."

18  (Emphasis in original)

19       Plaintiff was incarcerated for only 36 days after he was severely beaten by the active gang

20  members.  Plaintiff filed grievances on April 1, April 12, April 14 and Plaintiff's final grievance

21  regarding lack of medical care was filed on April 19, 2006.  Plaintiff was released on April 24, 2006.

22  As such, no pertinent relief was available  to plaintiff as to his grievance unless he chose to stay at the

23  jail beyond his "out date" so he could appeal the grievance and continue to receive the substandard

24  medical care that he had been receiving up to that point.  Any such requirement of exhaustion would

25

26      _____
        [2]

27  Defendants cite the case of *McKinney v. Carey*, 311 F. 3d.1198 (9th Cir. 2002)
    however, it is not relevant in that a careful reading of the case reveals
28  that exhaustion was required because the plaintiff therein was incarcerated
    at the time of the initiation of the lawsuit.

1    be patently absurd.

2    **C.  Plaintiff Attempted to Pursue All Administrative Remedies Available to Him**

3    It is clear that plaintiff attempted to exhaust any and all administrative remedies available to

4    him.  He repeatedly filed grievances regarding the jail's failure to provide adequate medical care for

5    his injuries.  Receiving no relief, he even filed a grievance on April 12, 2006, complaining that his

6    previous grievance regarding lack of medical care was "not answered right".

7    Understanding that the court is limited to consider only the contents of the pleadings in an

8    FRCP 12(b)(6) motion, plaintiff would like to make an offer of proof as to his lack of ability to

9    comply with any alleged exhaustion requirements.  Such an offer of proof would show that (1) plaintiff

10   is a native Spanish speaker whose grasp of English is severely limited; (2) plaintiff was, and still is,

11   suffering from injury to his brain from the incident on March 18, 2006, which has limited his ability to

12   function mentally; and (3) plaintiff repeatedly asked prison guards for information as to how to take

13   his complaints to the next level and received nothing but condescending remarks and jokes about his

14   injuries, and the same grievance form he had already filled out.   Under the circumstances in this case,

15   plaintiff must be excused from any alleged exhaustion requirements under the PLRA.

16

17   **D.  To Hold this Plaintiff to the PLRA Exhaustion Requirements Would be a**

18   **Violation of Due Process Under the Circumstances in This Case.**

19   Nowhere in the defendants' materials and declarations submitted in conjunction with their

20   motion does it state that plaintiff was made aware of any alleged exhaustion requirements under the

21   PLRA.   Nor is there any allegation that plaintiff was made aware of the dire consequences of failure

22   to appeal his grievances, to wit: that he might be precluded from ever filing a lawsuit against

23   defendants for their failure to protect him and their failure to provide him with adequate medical care.

24   Furthermore, plaintiff asks the court to take judicial notice of the fact that, at the time of plaintiff's

25   incarceration,  there was no law library at the jail where he might have been able to discover any such

26   PLRA exhaustion requirements.  Since plaintiff had already completed the court process, he had no

27   further contact with any legal counsel to advise him as to any alleged PLRA exhaustion requirements.

28   To hold this plaintiff to the exhaustion requirements alleged by the defendants would be a violation of

1   his right to Due Process under the circumstances in this case.

2                         **V.  <u>CONCLUSION</u>**

3        In accordance with the overwhelming weight of authority, the exhaustion requirements

4   contained in the PLRA do not apply to plaintiff due to the fact that he was not incarcerated at the time

5   he initiated this lawsuit.  Assuming arguendo that any such exhaustion requirements apply, plaintiff was

6   excused from complying for the following reasons:  there was no available remedy; he was unable to

7   comply due to mental incapacity and lack of language skills; and his efforts to comply were thwarted

8   by prison guards.   Furthermore, under the circumstances, it would be a violation of plaintiff's right to

9   Due Process to hold him to requirements of which he was unaware; of which he was not made aware

10   by the defendants; and which he had no way of discovering on his own.[3]

12                                  Respectfully submitted,

15   Dated: June 6, 2008                           _____/s/_____

16                                    KATE WELLS
                                    Attorney for Plaintiff, ISAAC VALDIVIA

20   Dated: June 6, 2008                           _____/s/_____

21                                    AARON LODGE
                                    Attorney for Plaintiff, ISAAC VALDIVIA

---

[3] Plaintiff did not submit his declaration as to the matters alleged herein which were not included in the complaint due to the dictates of FRCP 12(b)(6).  If the court please and finds it necessary, plaintiff will gladly submit such a declaration.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28