DANA McRAE, State Bar No. 142231
County Counsel, County of Santa Cruz
JASON M. HEATH, State Bar No. 180501
Assistant County Counsel
701 Ocean Street, Room 505
Santa Cruz, California 95060
Telephone: (831) 454-2049
Fax: (831) 454-2115

**Attorney for Defendants County of Santa Cruz
and Steve Robbins**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC VALDIVIA,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CRUZ; STEVE ROBBINS; TEN UNKNOWN CORRECTIONAL OFFICERS; TEN UNKNOWN OTHER COUNTY EMPLOYEES,<br><br>    Defendants. | Case No. C08 00916 JF<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Date:    June 27, 2008<br>Time:    9:00 a.m.<br>Dept:    3 (Hon. Jeremy Fogel) |

## INTRODUCTION

The evidence shows that plaintiff never filed a grievance or exhausted his administrative remedies as far as his assault is concerned. Likewise, the evidence shows that plaintiff never filed a grievance against correctional staff for failing to provide him with adequate medical care. The evidence also shows that plaintiff never completed the administrative process as to his claims that medical staff did not provide him with adequate medical care. Unable to counter this evidence that he failed to even remotely exhaust his administrative remedies, plaintiff asserts that he should be

treated differently than other plaintiffs who sue over conditions of confinement because he was no longer incarcerated at the time he filed this lawsuit.  The County's position is that the Prison Litigation Reform Act of 1995 (the "PLRA") applies to out-of-custody plaintiffs and three recent decisions (one from the Northern District) support the County's position.  Because plaintiff has not exhausted his administrative remedies, the County respectfully requests that the court grant this motion to dismiss plaintiff's complaint.

## ARGUMENT

### I.

### THE PLRA'S EXHAUSTION REQUIRMENT APPLIES TO OUT-OF-CUSTODY PLAINTIFFS

In *Mason v. County of San Mateo* (N.D. Cal.) 2005 U.S. Dist. LEXIS 1223, Judge Illston addressed the exact question currently before the Court.  In *Mason*, plaintiff alleged that correctional deputies used excessive force on him while he was detained in jail. (2005 U.S. Dist. LEXIS 1223, at *1-3.)  After his release from jail, plaintiff sued.  Defendants moved to dismiss the complaint on the grounds that plaintiff had failed to exhaust his administrative remedies under the PLRA. (*Id.* at *3.)  One of the central issues before the court was whether plaintiff was exempt from the PLRA's exhaustion requirement because he was not in custody when he filed suit. (*Id.* at *4.)

The court determined that the PLRA *did* apply to out-of-custody prisoners and that plaintiff's suit must be dismissed because he failed to comply with the administrative exhaustion requirements before filing his complaint. (2005 U.S. Dist. LEXIS 1223, at *6-12.)  The court distinguished *Kerr v. Puckett* (7th Cir. 1998) 138 F.3rd 321 and *Page v. Torrey* (9th Cir. 2000) 201 F.3rd 1136, two cases that plaintiff relies on in his opposition, on the grounds that those cases could not control in light of the Supreme Court's decisions in *Booth v. Churner* (2001) 532 U.S. 731 and *Porter v. Nussle* (2002) 534 U.S. 516, cases in which the Supreme Court clarified the broad scope of the PLRA's exhaustion requirement. (*Id.* at 9-10.)  Ultimately, the court determined that exempting ex-prisoners from the exhaustion requirement would defeat Congress's objectives in enacting the requirement. (*Id.* at 10.)

In *Morgan v. Maricopa County* (D. Az. 2003) 259 F.Supp.2nd 985, plaintiff claimed that he was subjected to an unconstitutional body cavity search while in jail.  Plaintiff sued for damages

after his release. Defendants moved for summary judgment on the grounds that plaintiff did not exhaust his administrative remedies prior to filing suit (plaintiff had filed a grievance, but did not appeal the informal resolution of the grievance). (259 F.Supp.2nd at 986-988.) Plaintiff argued that the PLRA did not apply to him because he was out-of-custody at the time he filed his complaint.

The court quoted the Supreme Court's explanation of its reasons for requiring exhaustion as a mandatory precedent to seeking judicial relief:

> "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in responses to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy."

(259 F.Supp.2nd at 991, quoting *Porter v. Nussle, supra*, 534 U.S. at 524-525.) The court distinguished *Page v. Torrey, supra*, on the grounds that it involved a civil, rather than a criminal detainee, and was decided before the Supreme Court's decisions in *Booth* and *Porter, supra*. The court determined that interpreting the PLRA as inapplicable to a former prisoner's claims which arose during the prisoner's incarceration would nullify Congress' intent in passing the PLRA and was absurd. The court noted that if a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect. Based on this analysis, the court dismissed plaintiff's complaint on the grounds that he failed to exhaust the necessary administrative remedies before filing suit. (259 F.Supp.2nd at 991-992.)

In *Reyes v. State of Oregon* (D. Or.) 2005 U.S. Dist. LEXIS 42167, the court followed *Mason* and *Morgan, supra*, in determining that the PLRA applied to an out-of-custody plaintiff. There, plaintiff was allegedly attacked by another inmate and not provided with adequate medical care thereafter. (*Id.* at *1.) The court detailed the Supreme Court's recognition of the Congressional intent behind the PLRA in *Booth* and *Porter, supra*. (*Id.* at *2-3.) The court concluded that it

1  "would be incongruous with Congress's purpose in enacting the PLRA to permit a plaintiff to escape
2  its requirement that suits relating to prison conditions proceed through the administrative channels
3  prior to making their way to federal court simply because plaintiff waited until he was released from
4  custody to file suit." (*Id.* at *5.)

5  Although many courts that have addressed this issue have determined that the PLRA does not
6  apply to out-of-custody plaintiffs, not all of that authority is as strong as plaintiff would have the
7  court believe. For instance, plaintiff relies on *Kerr v. Puckett, supra*, in support of his argument that
8  the PLRA is not applicable to him. However, *Kerr* is distinguishable because it involved a different
9  section of the PLRA than the one at issue in this case. As recognized by the Court in *Mason v.*
10 *County of San Mateo, supra*, the motivating policy goals behind section 1997e(a) (at issue here) and
11 section 1997e(e) (at issue in *Kerr*) are vastly different: subsection (e) was enacted to deter prisoners'
12 emotional distress lawsuits, while subsection (a) was intended to "afford corrections' officials time
13 and opportunity to address complaints internally before allowing the initiation of a federal case," and
14 "for cases ultimately brought to court, adjudication could be facilitated by an administrative record
15 that clarifies the contours of the controversy." (*Mason v. County of San Mateo, supra*, 2005 U.S.
16 Dist. LEXIS 1223, at *7-8, quoting *Porter v. Nussle, supra*, 534 U.S. at 524-525.) *Kerr* should not
17 be misread to apply to section 1997e(a) cases and thwart the clear congressional goals behind the
18 statute.[1]

19 Here, the Santa Cruz County Corrections Bureau provides inmates with an Inmate Grievance
20 Procedure that includes a comprehensive administrative appeals process. (Declaration of Len Lofano
21 ("Lofano Decl."), ¶¶ 2-3, Exhs. A, B.) Plaintiff never filed a grievance alleging that correctional
22 staff failed to protect him from the assault by other inmates on March 18, 2006, or any other
23 grievance based on the fact that the assault took place. In addition, plaintiff never filed a grievance
24 alleging that correctional staff failed to provide him with adequate medical care or ignored his
25 requests that he receive medical care, and never filed a grievance alleging improper training or

---

[1] Plaintiff also relies on *Page v. Torrey, supra*, in support of his position. However, as recognized in both *Mason* and *Morgan*, *supra*, the *Page* case involved a civil detainee, not a criminal detainee. Also, given that *Page* was decided before *Booth* and *Porter*, any generalized guidance that the case offers in contradiction to the principles espoused in the later opinions is highly questionable.

Valdivia v. County of Santa Cruz, et al.                                    Reply Brief In Support Of Motion To Dismiss
Case No. C08 00916 JF

supervision of correctional staff. (Lofano Decl., ¶¶4-5.) Although plaintiff did file several grievances concerning the quality of medical care he was receiving from *medical staff* at the Main Jail, each grievance was responded to in due course and plaintiff never appealed any of the grievances to the Watch Commander, the Jail Commander, or the Facility Manager (third, fourth, and fifth levels of review). (Lofano Decl., ¶ 6, Exhs. C-H.)

Plaintiff is not exempt from complying with the PLRA simply because he waited until he was released to file his complaint. To excuse plaintiff from the administrative exhaustion requirements, the court would be treating him differently than other inmates who allege injuries in prison and would be acting contrary to Congress's intent to decrease the quantity and increase the quality of prisoner lawsuits and give the facility the opportunity to address problems at the lowest possible level. Because plaintiff did not exhaust his administrative remedies prior to filing suit, the court should dismiss his complaint.

## II.

## PLAINTIFF'S REMAINING ARGUMENTS ARE MERITLESS

Plaintiff asserts that even if the PLRA does apply to him, he should be excused from complying with it. Plaintiff inconsistently argues that there was no remedy available to him, that he attempted to pursue all administrative remedies available to him, and that he was prevented from pursuing his administrative remedies because of a lack of knowledge or ability. Each of these arguments lack merit.

Plaintiff concedes that he was incarcerated for 36 days after his assault but argues that "no pertinent relief was available" to him during that time and that he would have had to stay in jail beyond his release date to obtain relief based on his grievance. The evidence does not support this argument and it simply does not make sense. The evidence indicates that each of plaintiff's grievances against medical staff was reviewed and dealt with in turn, and that he simply did not appeal their disposition to the next level. In addition, plaintiff's argument is contrary to the law. In *Woodford v. Ngo* (2006) 548 U.S. 81, the United States Supreme Court reaffirmed that a prisoner must exhaust all levels of the administrative process in its entirety before filing a complaint concerning conditions of confinement, even if his original claim was untimely, and the Court

explicitly disapproved the idea that a prisoner could manipulate procedural rules to the prisoner's benefit to avoid complying with the administrative process. (584 U.S. at 87-103.)

Plaintiff's next argument, that he in fact *did* attempt to pursue all administrative remedies available to him, undercuts his argument that no pertinent relief was available and is factually incorrect. Again, the evidence shows that while plaintiff filed several grievances as to medical staff, he did not complete the appeals process as to any of them. Moreover, the evidence shows that plaintiff never filed any grievances on the issue of correctional staff's failure to protect him from assault, correctional staff's failure to provide him with medical care, or any failure to train allegations.

Plaintiff's final argument, that he should be exempt from the administrative exhaustion requirements because he just did not understand them, undermines both of his previous arguments and is also factually incorrect. Exhibit B to the Lofano Declaration shows that the inmate grievance procedure is made available to inmates as part of the inmate orientation process; in any event, plaintiff clearly knew about the grievance procedures because he filed several grievances against medical staff. Plaintiff's demonstrated command of English in these grievances is not "severely limited" as the opposition claims, and whatever brain injury he claims to be suffering from obviously did not inhibit him in filing those grievances. Given that he filed those grievances, the argument that he did not understand the grievance process is unavailing. Plaintiff's claim that the PLRA should not apply to him because he did not have adequate legal counsel or know the consequences of the law is unsupported by any legal rationale and is an argument that, if applied, would rip a hole through the PLRA of immeasurable breadth. Plaintiff cites no legal authority in support of such an argument and the court should reject it.

## CONCLUSION

In this case, plaintiff, a prisoner covered with gang tattoos, threatened to hurt an inmate in a minimum security facility so he would get transferred to the maximum security facility to be closer to his son, who was also incarcerated; after plaintiff was transferred, he got beat up by other gang members and now claims it was the fault of the facility in failing to protect him. This case is literally the poster-child for the PLRA. The evidence shows that plaintiff was completely conversant

with the grievance procedures and simply chose not to use them. To treat plaintiff differently than other inmates just because he waited to pursue his lawsuit until he was released would undermine the intent of Congress in enacting the PLRA. Accordingly, defendants County of Santa Cruz and Steve Robbins respectfully request that the court dismiss this action.

Dated: June 9, 2008                               DANA McRAE, COUNTY COUNSEL

                                                  By:     /S/
                                                        JASON M. HEATH
                                                        **Assistant County Counsel**
                                                        **Attorneys for Defendants County of Santa Cruz and Steve Robbins**