**E-Filed 8/27/2008**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ISAAC VALDIVIA,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA CRUZ; STEVE ROBBINS; TEN UNKNOWN CORRECTIONAL OFFICERS; TEN UNKNOWN OTHER COUNTY EMPLOYEES,<br><br>        Defendants. | Case Number 08-00916 JF<br><br>ORDER[1] DENYING DEFENDANT'S MOTION TO DISMISS<br><br>[re: docket no. 11] |

## I. BACKGROUND

Born in 1962, Plaintiff Isaac Valdivia ("Valdivia") has lived primarily in Santa Cruz County. He became a member of the Las Lomas Boys street gang when he was fourteen years old. As a teenager, Valdivia had multiple tattoos placed on his body that indicate affiliation with the Las Lomas Boys. In 1983, Valdivia withdrew from active gang membership to focus on raising his family.

---

[1] This disposition is not designated for publication in the official reports.

1    Since 1983, Valdivia has been arrested several times and has spent time in jail for drug-related offenses. According to his complaint, Valdivia feared being housed with gang members while in jail. In particular, he was concerned that he might be attacked by active members of the Las Lomas Boys because he had disassociated himself from the gang. Valdivia also was afraid of being attacked by members of other gangs because his tattoos revealed his former gang affiliation.

In 2003, Valdivia was sentenced to county jail after being arrested for drug possession and health-code violations. He was housed in a gang unit, and active members of the Las Lomas Boys pressured him to rejoin the gang. Valdivia pressed an emergency panic button, and prison officials subsequently relocated him to protective custody. Valdivia's complaint alleges that individuals are forever in danger of retaliation after having pressed an emergency panic button. Additionally, his complaint asserts that pressing the panic button officially designated him as a dropout rather than an inactive member of the Las Lomas Boys.

In 2005, Valdivia was sentenced to eighty-five days in county jail for violating the terms of his probation. Valdivia alleges that he made multiple requests not to be housed in an active gang unit. Despite these alleged requests, Valdivia was housed in a gang unit with active members of a rival gang of the Las Lomas Boys. Valdivia also alleges that these gang members became aware that he had left a gang and that he had pressed an emergency panic button.

On March 18, 2006, Valdivia was attacked by enemy gang members. He allegedly was unable to reach an emergency panic button. Jail officers found him severely injured and barely conscious. Valdivia was taken to the jail's doctor and was later transferred to a hospital. He claims that he has lingering injuries that have resulted in facial scarring, neurological damage, and diminished use of his left hand.

Valdivia remained in jail for thirty-six days following this attack. During this period, he filed four grievances claiming that he was not being provided with adequate medical care. It appears that all four grievances were denied, and Valdivia admits he did not appeal any adverse decision.

Following his release from the Santa Cruz County jail, Valdivia filed the instant action

2

Case No. 08-00916 JF
ORDER DENYING DEFENDANT'S MOTION TO DISMISS
(JFEX2)

asserting three claims for relief against the County of Santa Cruz; the Sheriff of the County of Santa Cruz, Steve Robbins; ten unknown correctional officers; and ten unknown other county employees (collectively "Defendants"). Valdivia claims that while he was in jail, Defendants acted intentionally to place him at risk of substantial harm or with deliberate indifference to a known and substantial risk of harm. He also alleges that Defendants did not provide him with adequate medical assistance. Finally, Valdivia alleges that Defendants failed to provide adequate supervision of jail officers. Valdivia seeks general, special, and punitive damages as well as reasonable attorneys' fees, costs, and further relief as the Court deems proper.

On March 6, 2008, Defendants filed an unenumerated Rule 12(b) motion to dismiss. Defendants assert that Valdivia did not exhaust available administrative remedies prior to filing the instant complaint, as Defendants contend was required to do under the Prison Litigation Reform Act of 1995 ("PLRA") and *Booth v. Churner*, 532 U.S. 731 (2001). In opposing the motion, Valdivia argues that the PLRA's exhaustion requirement does not apply to him because he no longer was incarcerated at the time he filed suit.

## II. DISCUSSION

Pursuant to the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). In *Page v. Torrey*, the Ninth Circuit interpreted the PLRA's definition of "prisoner" to apply only to those individuals "*currently* detained as a result of accusation, conviction, or sentence for a criminal offense." 201 F.3d 1136, 1139 (9th Cir. 2000) (citations omitted) (emphasis added). Thus, according to *Page*, an individual ceases to be a prisoner within the meaning of the PLRA following release from incarceration or detention. *See id.* at 1140.

Defendants argue that *Page* no longer is good law in light of the Supreme Court's

subsequent decisions in *Booth v. Churner*, 532 U.S. 731 (2001) and in *Porter v. Nussle*, 534 U.S. 516 (2002). In *Booth*, the Supreme Court found that the PLRA required exhaustion of administrative remedies even when prisoners only sought monetary damages rather than remedial action. 532 U.S. at 741. In *Porter*, the Supreme Court ruled that the PLRA's "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." 534 U.S. at 520.

Valdivia points out that every federal appellate circuit "that has ruled on the issue has found that the PLRA exhaustion requirements do not apply to a plaintiff who was not incarcerated at the time of the filing of his or her lawsuit." Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss at 5 (emphasis removed).[2] In briefing and at oral argument, the parties noted that there is no current consensus within the Ninth Circuit as to whether the exhaustion requirement of the PLRA applies to out-of-custody plaintiffs. *See, e.g.*, *Reyes v. State of Oregon*, No. Civ. 05-584 HA, 2005 WL 1459662 (D. Or. June 21, 2005)[3]; *Mason v. County of San Mateo*, No. C 02-0463 SI, 2005 WL 3957924 (N.D. Cal. Jan. 26, 2005); *Morgan v. Maricopa County*, 259 F. Supp.2d 985 (D. Ariz. 2003).

The district courts in *Mason* and *Morgan* found that *Booth* and *Porter* have supplanted *Page* by requiring exhaustion in all suits regarding prison life, even if the plaintiff does not seek remedial action. *See Mason*, 2005 WL 3957924 at *2; *Morgan*, 259 F. Supp. 2d at 991. *Mason* and *Morgan* also distinguished *Page* because the issue in that case was not whether the PLRA's requirements applied to out-of-custody inmates but rather whether a civilly committed plaintiff came within the PLRA's definition of "prisoner." *See Mason*, 2005 WL 3957924 at *3; *Morgan*,

---

[2]*See Medina-Claudio v. Rodríguez-Mateo*, 292 F.3d 31 (1st Cir. 2002); *Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999); *Ahmed v. Dragovich*, 297 F.3d 201 (3d Cir. 2002); *Michau v. Charleston County, South Carolina*, 434 F.3d 725 (4th Cir. 2006); *Jackson v. Johnson*, 475 F.3d 261 (5th Cir. 2007); *Cox v. Mayer*, 332 F.3d 422 (6th Cir. 2003); *Witzke v. Femal*, 376 F.3d 744 (7th Cir. 2004); *Nerness v. Johnson*, 401 F.3d 874 (8th Cir. 2005); *Norton v. The City of Marietta, Oklahoma*, 432 F.3d 1145 (10th Cir. 2005); *Troville v. Venz*, 303 F.3d 1256 (11th Cir. 2002); *LaFontant v. I.N.S.*, 135 F.3d 158 (D.C. Cir. 1998).

[3]In *Reyes*, the court adopted the reasoning in *Mason v. County of San Mateo*, No. C 02-0463 SI, 2005 WL 3957924 (N.D. Cal. Jan. 26, 2005).

259 F. Supp. 2d at 992.  *Morgan* also applied the PLRA's exhaustion requirements to out-of-custody inmates, reasoning that the intent of Congress in enacting the PLRA was to "reduce the quantity and improve the quality of prisoner suits." 259 F. Supp. 2d at 991  (quoting *Porter*, 534 U.S. at 524–25).  In both cases, the courts found that the purpose of the PLRA was to allow jail or prison authorities the opportunity to resolve matters prior to federal adjudication and also to facilitate the resolution of cases in the federal courts by creating an administrative record. *Mason*, 2005 WL 3957924 at *2; *Morgan*, 250 F. Supp. 2d at 991 (both quoting *Porter*, 534 U.S. at 524–25).

On the facts of the instant case, this Court respectfully declines to adopt the reasoning of *Reyes*, *Mason*, and *Morgan*.  On its face, the statutory language indicates that the PLRA's requirements only apply to plaintiffs who are currently incarcerated or detained.  Ninth Circuit case law gives controlling weight to a statute's plain reading unless such a reading leads to "absurd" or inconsistent results.  *Flores-Arellano v. INS*, 5 F.3d 360, 362 (9th Cir. 1993). Although it is true that *Page* determined only whether a civilly-detained plaintiff was a prisoner for the purposes of the PLRA, the court also observed that "the natural reading of the text is that, to fall within the definition of 'prisoner,' the individual in question must be *currently* detained as a result of accusation, conviction, or sentence for a criminal offense." *Page*, 201 F.3d at 1139 (emphasis added).  Moreover, *Booth* and *Porter* concerned plaintiffs who *were* incarcerated when they filed their respective complaints, and neither case directly addressed the issue of whether the PLRA's exhaustion requirement applies to former inmates.  *See Porter*, 534 U.S. at 519; *Booth*, 532 U.S. at 734.  Finally, the Court finds compelling the fact that every circuit court that has addressed the issue has found that the PLRA's exhaustion requirement does not apply to out-of-custody plaintiffs.

Although it is not necessary to reach the question of Congressional intent in this case, an analysis of the PLRA's legislative history also indicates that the statute's exhaustion requirement was not intended to apply to former inmates.  In *Porter*, the Supreme Court noted that "floor statements 'overwhelmingly suggest[ed]' that Congress sought to curtail suits qualifying as 'frivolous' because of their 'subject matter.'" 534 U.S. at 522 (citations omitted).  For example, a

5

floor speech made by Senator Robert Dole used the term "inmates" interchangeably with that of "prisoner." *See* 141 Cong. Rec. S14408-01, *S14413–14 (daily ed. Sept. 27, 1995). In *Witzke v. Femal*, the Seventh Circuit explained that "prisoners often have an abundance of time, while facing a restricted number of enjoyable activities with which to pass the time other than filing federal suits." 376 F.3d 744, 750 (7th Cir. 2004). However, once an individual is released from prison, the "opportunity costs of litigation rise . . . diminishing the need for special precautions against weak suits." *Id.* (quoting *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998)).

Accordingly, the Court concludes that the exhaustion requirement of the PLRA does not apply to former inmates. Because Valdivia had been released from the Santa Cruz County jail prior to bringing the instant suit, he is not subject to 42 U.S.C. § 1997e(a).

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is DENIED. Defendants shall answer the complaint within twenty (20) days of the date of this order.

DATED: August 27, 2008

_____
JEREMY FOGEL
United States District Judge

1   This Order has been served upon the following persons:

2   Jason Michael Heath     Jason.Heath@co.santa-cruz.ca.us, csl026@co.santa-cruz.ca.us

3   Aaron Lodge     alodge@teachjustice.com

4   Kate Wells     lioness@got.net

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28